UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

NEALAN BHATT, Individually and on
Behalf of All Others Similar Situated,

      Plaintiff,

v.
                                    Case No. 8:17-cv-02185

TECH DATA CORPORATION, ROBERT
M. DUTKOWSKY and CHARLES V.
DANNEWITZ,
                                    **DISPOSITIVE MOTION**

      Defendants.

_____/

## DEFENDANTS' MOTION TO DISMISS COMPLAINT

Defendants Tech Data Corporation, Robert M. Dutkowsky, and Charles V. Dannewitz (collectively, the "Defendants") move to dismiss all claims asserted against them in Plaintiff's Class Action Complaint (the "Complaint"), pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6), and the Private Securities Litigation Reform Act of 1995 (the "PSLRA").

### I. INTRODUCTION

Plaintiff's Complaint is an all-too common baseless "strike suit" following a decline in the share price of Tech Data Corporation ("Tech Data" or the "Company") after the Company fell short on one quarter's projected earnings following a significant acquisition. Critically, the two claims pled in the Complaint are barred by the PSLRA's safe harbor, which immunizes Defendants from liability for claims arising from forward-looking statements accompanied by cautionary disclosures. In a futile attempt to avoid the impact of these disclosures, the

Complaint is carefully worded to omit the cautionary disclosures. Regardless, this Court can, and should, take judicial notice of these documents on a motion to dismiss under the PSLRA. In addition, this Court should dismiss the Complaint because the allegations do not set forth any statements that are misleading – in fact the statements are accurate – nor does it identify facts sufficient to establish the required elements of scienter or loss causation.[1]

## II.   FACTUAL BACKGROUND

Tech Data is a wholesale distributor of technology products and solutions, serving as a link in the technology supply chain by bringing products from technology vendors to market and providing its customers with logistic capabilities and services. *See* Complaint, ¶ 14. On February 27, 2017, Tech Data completed the acquisition of the Technology Solutions business ("TS") from Avnet, Inc., for an aggregate purchase price of approximately $2.672 billion (the "TS acquisition"). *Id.*, ¶ 15.

### A.   Allegations Related To Earnings And Performance

On June 1, 2017, Tech Data issued a press release, also attached as Exhibit 99.1 to the Form 8-K Tech Data filed with the United States Securities And Exchange Commission ("SEC") on that date, announcing Tech Data's financial and operating results for the quarter ending April 30, 2017 (the "June 1 Press Release"). *Id.*, ¶ 16; *see also* Tech Data's SEC Form 8-K for the fiscal quarter ending April 30, 2017, attached as **Exhibit 1**, at p. 4.[2] On August 31,

---

[1] Defendants recognize that competing applications for lead plaintiff have been filed by different attorneys. Regardless of who is designated as lead plaintiff, that plaintiff will take over the case in its then-current status and will be bound by the current Complaint.

[2] It is well-settled that on a motion to dismiss a securities fraud action, the Court may consider any public records and documents, including SEC filings, which are central to a plaintiff's claims or referred to in the complaint. *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1287 (11th Cir. 1999); *Allyn v. CNL Lifestyle Properties, Inc.*, No. 6:13-cv-132, 2013 WL 6439383 (M.D.

2017, Tech Data issued another press release, also attached as Exhibit 99.1 to the Form 8-K Tech Data filed with the SEC on that same date, announcing Tech Data's financial and operating results for the quarter ending July 31, 2017 (the "August 31 Press Release"). *Id.*, ¶ 21; *see also* Ex. 2, Tech Data's SEC Form 8-K for the fiscal quarter ending July 31, 2017, at p. 6.

Plaintiff Nealan Bhatt alleges that he "acquired Tech Data common stock at artificially inflated prices during the class period [*i.e.*, between the June 1 Press Release and the August 31 Press Release] and suffered damages as a result of the revelation of the alleged corrective disclosure." *See* Complaint, ¶¶ 1, 6.

The Complaint quotes large sections of the June 1 Press Release and an investor conference call held that same day (the "June 1 Earnings Call"), and alleges in conclusory fashion that they contain misstatements. *See* Complaint, ¶ 20 ("The statements in paragraphs ¶16-18 above were materially false and/or misleading"). The Complaint also relies upon the August 31 Press Release and investor call held that same day (the "August 31 Earnings Call"), where Tech Data explained the reasons why its earnings per share ("EPS") were lower than anticipated. *Id.*, ¶¶ 22-23 (explaining that, among other reasons, the lower EPS was due to "execution related" and "market driven" issues). Complete copies of the transcripts of the June 1 Earnings Call and the August 31 Earnings Call are attached as **Exhibits 3 and 4**, respectively.

---

Fla. Nov. 27, 2013) (granting motion to dismiss after taking judicial notice of SEC filings). Tech Data attaches both SEC Form 8-Ks and Earnings Call Transcripts referenced in the Complaint as **Exhibits 1-4**, and also, as **Exhibit 5**, its Form 10-K annual report for the fiscal year ending January 31, 2017, filed on March 30, 2017 (the "2017 Annual Report"), which is incorporated by reference into the documents attached as Exhibits 1-4.

Essentially, the Complaint alleges that Defendants knew about the issues discussed on August 31 no later than June 1, notwithstanding the fact that those events had not occurred as of June 1. *Id.* at 20 (alleging that the Defendants "failed to disclose that (1) the Company was experiencing execution and operational issues; (2) these issues were impacting the Company's financial performance; (3) consequently, the Company would not achieve its guidance; and (4) therefore the Company's financial statements were materially false and misleading at all relevant times.").

**B.    The Complaint Omits Critical Cautionary Disclosures**

Both the June 1 Press Release and June 1 Earnings Call included robust cautionary language regarding the forward-looking nature of the information provided. Tech Data cautioned that projections of future performance were forward-looking statements, and also explained the words generally used in such statements as follows:

> *Words such as "expects," "anticipates," "targets," "goals," "projects," "intends," "plans," "believes," "seeks," "estimates,"* variations of such words, and similar expressions ***are intended to identify such forward looking statements***. *In addition, any statements that refer to* ***projections of Tech Data's or Technology Solutions' future financial performance****, our anticipated growth and trends in our businesses, and other characterizations of future events or circumstances,* ***are forward looking statements****. These* ***forward looking statements are only predictions and are subject to risks, uncertainties, and assumption****s. Therefore, actual results may differ materially and adversely from those expressed in any forward looking statements.*

*See* Exhibit 1, p. 5 (emphasis added).

The June 1 Press Release specifically stated:

**Forward-Looking Statements**

> Certain statements in this communication may contain "forward looking statements" within the meaning of the Private Securities Litigation Reform Act of 1995. These statements, including statements regarding Tech Data's plans, objectives, expectations and intentions relating to the Technology Solutions business ("Technology Solutions"), Technology Solutions' expected contribution to Tech Data's results, the expected benefits of Technology Solutions, **Tech Data's and Technology Solutions' financial results and estimates and/or business prospects involve a number of risks and uncertainties and actual results could differ materially from those projected**. These forward looking statements are based on current expectations, estimates, forecasts, and projections about Technology Solutions and the operating environment, economies and markets in which Tech Data and Technology Solutions operate and the beliefs and assumptions of our management.

See *id.* (emphasis added).

Tech Data also identified previously filed public documents, which would provide investors with more detailed explanations of the risks that might affect Tech Data in the future:

> For additional information with respect to risks and other factors which could occur, **see Tech Data's Annual Report on Form 10K for the year ended January 31, 2017, including Part I, Item 1A, "Risk Factors" therein**, Quarterly Reports on Form 10Q, Current Reports on Form 8K and other securities filings with the Securities and Exchange Commission (the "SEC") that are available at the SEC's website at www.sec.gov and other securities regulators. Readers are cautioned not to place undue reliance upon any such forward looking statements, which speak only as of the date made. Many of these factors are beyond Tech Data's control. …

See *id.* (emphasis added).

Tech Data's Corporate Vice President of Investor Relations & Corporate Communications, Arleen Quinones, opened the June 1 Earnings Call using similar language and directing listeners to the risk factors identified in the company's most recent annual report, expressly warning investors:

Before we begin, I would like to remind all listeners that today's earnings press release and certain matters discussed in today's call may include forward-looking statements as defined in the Private Securities Litigation Reform Act of 1995. These statements are based on the company's current expectations and are subject to risks and uncertainties. **These risks and uncertainties include, but are not limited to, those factors identified in the press release** and in our filings with the Securities and Exchange Commission, including those filings related to our acquisition of Avnet's Technology Solutions business, **as well as our most recent annual report on Form 10-K, which identify important risk factors that could cause actual results to differ materially from those contained in the forward-looking statements**.

Please be advised that the statements made today during today's call should be considered to represent the expectations of management as of the date of this call. The company undertakes no duty to update any forward-looking statements to actual results or changes in expectation.

*See* Exhibit 3, p. 2 (emphasis added).

As part of the above disclosures, Tech Data referred readers and listeners to risk factors more fully described in Tech Data's 2017 Annual Report. *See* Ex. 1, p. 5 and Ex. 3, p. 2. Tech Data's 2017 Annual Report specifically disclosed several risk factors relevant to Plaintiff's claims. Tech Data cautioned investors that there were risks associated with the integration of the TS business:

**We may encounter difficulties in fully integrating TS into our business and may not fully achieve, or achieve within a reasonable time frame, expected strategic objectives and other expected benefits of the acquisition.**

The success of the acquisition of TS will depend, in part, on our ability to realize the anticipated growth opportunities and potential synergies and cost savings from the integration of TS with our existing business. There may be substantial difficulties, costs and delays involved in the integration of TS with our own business, including distracting management from day-to-day operations, potential incompatibility of corporate cultures, and costs and delays

6

in implementing common systems and procedures. In addition, the process of integrating the operations of TS could cause an interruption of, or loss of momentum in, the activities of one or more of our combined businesses and the possible loss of key personnel or distribution partners. Any one or all of these factors may increase our operating costs or lower our anticipated financial performance. Our failure to fully integrate TS and achieve the expected benefits of the proposed acquisition of TS within a reasonable time frame or at all could have a material adverse effect on our financial condition and results of operations.

*See* Ex. 5, 2017 Annual Report, ITEM 1A *Risk Factors*, p. 13 (emphasis in original).

Tech Data cautioned investors that the TS business may not perform as anticipated:

**TS may underperform relative to our expectations.**

Following the acquisition of TS, we may not be able to maintain the levels of revenue, earnings or operating efficiency that we and TS have achieved or might achieve separately. The business and financial performance of TS are subject to certain risks and uncertainties. We may be unable to achieve the same growth, revenues and profitability that TS has achieved in the past. Our failure to do so could have a material adverse effect on our financial condition and results of operations.

*See id.* (emphasis in original).

Tech Data also cautioned investors that profits could be hurt by economic conditions,

specifically mentioning rebates as one of the potential risks:

**Our ability to earn profit is more challenging when sales slow from a down economy as a result of gross profit declining faster than cost reduction efforts taking effect.**

… The economic environment may also result in changes in vendor terms and conditions, such as rebates, cash discounts and cooperative marketing efforts, which may also result in downward pressure on our gross profit.

*See id.*, p. 11 (emphasis in original).

The Complaint ignores these key cautionary disclosures and the identified risk factors, despite relying upon other portions of the June 1 Press Release and June 1 Earnings Call. But this Court can, and should, consider them. *See Bryant*, 187 F.3d at 1287; *Allyn*, 2013 WL 6439383. This Court's consideration of the disclosures and identified risks, as well as other deficiencies set forth below, requires the dismissal of the Complaint.

## III.   MEMORANDUM OF LAW

### A. The PSLRA Imposes Heightened Pleading Standards For Federal Securities Claims.

To state a viable claim for securities fraud, Plaintiff must allege: (1) a misstatement or omission; (2) of a material fact; (3) made with scienter; (4) on which Plaintiff justifiably relied; (5) that proximately caused Plaintiff's injury. *See Bryant*, 187 F.3d at 1281. The PSLRA significantly heightened the pleading standards for these elements of federal securities claims to combat abusive strike suits. *See Bryant*, 187 F.3d at 1273.

As such, the PSLRA imposes two conditions – both of which must be satisfied – to state a claim. If not, dismissal is **mandatory**. *See* 15 U.S.C. § 78u-4(b)(3)(A) ("the court **shall**, on the motion of any defendant, **dismiss the complaint** if the requirements of paragraphs (1) and (2) are not met.") (emphasis added). First, Plaintiff must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and if an allegation regarding the statement or omission is made on information and belief … state with particularity all facts on which that belief is formed." *Id.* § 78u-4(b)(1). Second, Plaintiff must "with respect to *each act or omission alleged* . . . state *with particularity* facts giving rise to a *strong inference* that the defendant acted with the required state of mind." *Id.* § 78u-4(b)(2) (emphasis added). To overcome this threshold, Plaintiff must allege facts that, when taken

together, give rise to "an inference of scienter" that is "more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007). A "plaintiff must plead scienter with particular facts that give rise to a strong inference that the defendant acted in a severely reckless manner." *Bryant*, 187 F.3d at 1287. This is a difficult standard: a showing of inexcusable negligence is *not* enough. *See Durgin v. Mon*, 415 F. App'x 161, 167 (11th Cir. 2011) ("An inference of severe recklessness is *not* as compelling as an inference that, at worst, defendants acted with inexcusable negligence.") (emphasis in original).

### B.  The Complaint Fails To State A Claim.

The Complaint must be dismissed because it fails to adequately plead the necessary elements under Section 10(b) and Rule 10b-5. Plaintiff's failure to adequately plead a primary violation of Section 10(b) in Count I of the Complaint is also fatal to the dependent Section 20(a) claims in Count II against the individual Defendants. *See Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008) ("Because a primary violation of the securities laws is an essential element of a § 20(a) derivative claim, we have held that a plaintiff adequately pleads a § 20(a) claim only if the primary violation is adequately pleaded.")

### 1.  Both Claims Are Based On Non-Actionable Forward-Looking Cautionary Statements.

Plaintiff's claims are barred because they are premised on non-actionable forward-looking statements, which were accompanied by the requisite meaningful cautionary disclosures. *Bryant*, 187 F.3d at 1276. The PSLRA contains a safe harbor that protects "'forward-looking statements' from serving as a basis of liability in private securities fraud

suits if the statements qualify as 'forward-looking' under 15 U.S.C. §§ 78u-5(i)(1)(A)-(F), and meet any one of the statutory conditions set forth in 15 U.S.C. §§ 78u-5(c)(1)(A)-(B)." *Id.* "Forward-looking statements" include projections of revenue (including earnings per share), statements of plans and objectives of management for future operations, and statements of future economic performance. *See* 15 U.S.C. § 78u-5(i)(1)(A)-(C). These obviously forward-looking statements are specifically set forth as part of the statutory definition:

> The term "**forward-looking statement**" means—
>
> (A) a statement containing a **projection of revenues**, income (including income loss), **earnings** (including earnings loss) **per share**, capital expenditures, dividends, capital structure, or other financial items;
>
> (B) a statement of the **plans and objectives** of management for future operations, including plans or objectives relating to the products or services of the issuer;
>
> (C) a statement of **future economic performance**, including any such statement contained in a discussion and analysis of financial condition by the management or in the results of operations included pursuant to the rules and regulations of the Commission;

15 U.S.C.A. § 78u-5(i)(A)-(C) (emphasis added).

The statements at issue are not even a close call. Critically, the Complaint specifically challenges Tech Data's forward looking statement regarding its anticipated earnings per share as the foundation of Plaintiff's claim. *See* Complaint, at p. 7 (emphasizing the statement: "For the quarter ending July 31, 2017, the Company anticipated non-GAAP EPS to be in the range of $1.95 to $2.08") and p. 9 (emphasizing a similar statement anticipating non-GAAP earnings per diluted share to be in that same range). These types of statements (*i.e.*, projections of revenue and earnings per share) are specifically defined as being included within the definition

of "forward-looking statements" subject to the PSLRA's safe harbor. *See* 15 U.S.C. § 78u-5(i)(1)(A).

In addition to the protections provided by the PSLRA's safe harbor, the statements at issue are also protected by the judicially created "bespeaks caution doctrine." *Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.*, 594 F.3d 783, 796 (11th Cir. 2010) (noting that the Eleventh Circuit's "judicially created bespeaks caution doctrine" is the "statutory equivalent" of the "PSLRA safe harbor provision"). "Under the bespeaks caution doctrine, a forward-looking statement is rendered immaterial as a matter of law when accompanied by meaningful cautionary language." *Id.* The state of mind of the speaker is irrelevant. *Id.*

Defendants are shielded from liability for these statements because they were accompanied by meaningful cautionary statements. *See* 15 U.S.C. § 78u-5(c)(1)(A)(i). Both the safe harbor and the bespeaks caution doctrine bar Plaintiff's claims allegedly arising from these statements because they either explicitly speak to future events or state opinions that can be evaluated only after consideration of future events. *See, e.g., Harris v. Ivax Corporation*, 182 F.3d 799, 805 (11th Cir. 1999) (affirming holding that statements "our fundamental business and . . . strategies remain intact" and are "very well positioned" were forward-looking with accompanying adequate cautionary language, within the safe harbor); *Edward J. Goodman Life Income Trust*, 594 F.3d at 796 (affirming dismissal of shareholders' fraud claims stemming from earning projections because of the safe harbor provision).

Here, the Complaint fails to specify the statements "alleged to have been misleading" as required, but does emphasize a few sentences discussing the integration of TS and the anticipated earnings per share for the quarter ending July 31, 2017. *See* Complaint, ¶¶ 16-18

(items emphasized in bold). The statements challenged by Plaintiff are forward-looking statements that were accompanied by cautionary language that specifically warned of risks similar to those actually experienced. *See* Exhibit 5, p. 11-13 (Risk Factors in the 2017 Annual Report). Tech Data specifically cautioned the investing public, including Plaintiff, that it might "encounter difficulties in fully integrating TS into our business," that "TS may underperform relative to our expectations," and that "vendor terms and conditions, such as rebates, cash discounts and cooperative marketing efforts, which may also result in downward pressure on our gross profit." *Id.*

"[W]hen an investor has been warned of risks of a significance similar to that actually realized, she is sufficiently on notice of the danger of the investment to make an intelligent decision about it according to her own preferences for risk and reward." *Harris*, 182 F.3d at 807. Accordingly, Plaintiff's claims are barred by the safe-harbor provided under the PSLRA and the bespeaks caution doctrine. Because Plaintiff cannot plead around the safe-harbor and the bespeaks caution doctrine to make these forward-looking statements actionable where, as here, they have been accompanied by meaningful disclosures, the Complaint should be dismissed with prejudice.

> 2. **The Complaint Fails To Specifically Identify Any Actionable Statement That Is Alleged To Be Misleading And Fails To Allege Why Any Such Statement Is Misleading.**

Although Plaintiff's Complaint quotes large sections from press releases and earnings call transcripts, it fails to "specify each statement alleged to have been misleading" and "the reason or reasons why the statement is misleading" with the particularly required by PSLRA and Rule 9(b). *See* 15 U.S.C. § 78u-4(b)(1). "The PSLRA closes the universe of supposedly

false statements under scrutiny to those 'specified' in the complaint." *See Harris*, 182 F.3d at 804 ("While the legislative history does not explain this particular requirement, it implies piecemeal examination of the statements found in a company communication.").

In the section titled "Material Misstatements and Omissions during the Class Period," the Complaint quotes a large section of the June 1 Press Release, which announced the financial results for the first quarter ended April 30, 2017. *See* Complaint, ¶ 16. The Complaint also quotes from the June 1 Earnings Call. *Id.*, ¶¶ 17-18. The Complaint does not specify the statements "alleged to have been misleading" or the "reasons why the statement is misleading," as required; instead, the Complaint simply emphasizes a few sentences discussing the integration of TS and the anticipated earnings per share for the quarter ending July 31, 2017. *See* Complaint, ¶¶ 16-18 (items emphasized by Plaintiff in bold). This does not comply with the level of specificity required by the PSLRA. *See* 15 U.S.C. § 78u-4(b)(1); *Harris*, 182 F.3d at 804.

Lacking the required specificity, the Complaint merely alleges that the actual non-GAAP earnings per share resulting from the second fiscal quarter ended July 31, 2017, were lower than anticipated in the June 1 Press Release and June 1 Earnings Call. *See* Complaint, ¶¶ 21-23 (quoting large portions of the August 31 Press Release and August 31 Earnings Call). The Company explained in the August 31 Press Release and August 31 Earnings Call that the earnings per share were lower than anticipated for multiple reasons that were not known at the time of the June 1 Press Release and June 1 Earnings Call. *See* Exhibits 1-4; *see also* Complaint, ¶ 23 ("**All of those issues are solvable. It's just that they impacted us in this quarter in a way that was much larger than we anticipated.**") (quoting, with emphasis, the

August 31 Press Release). In other words, the issues that negatively affected the Company's earnings were not anticipated at the time of the June 1 Press Release and June 1 Earnings Call, contradicting Plaintiff's theory.

### 3.      The Statements Quoted In The Complaint Are Accurate.

Plaintiff's Complaint fails to allege a single fact showing that Tech Data's public statements in the June 1 Press Release and June 1 Earnings Call were not accurate at that time. Plaintiff alleges that Defendants failed to disclose "execution and operational issues" that were impacting "financial performance" that would prevent the company from "achieve[ing] its guidance." *See* Complaint, ¶ 20. Failing to allege a single fact to support these conclusory allegations, the Complaint relies entirely on the hindsight that the Company did not achieve that guidance. *Id.* at ¶ 21. Plaintiff has failed to plead specific facts that would cast any doubt on the truth or accuracy of any statement in the June 1 Press Release or the June 1 Earnings Call at the time they were made.

### 4.      The Company's Public Disclosures Are Fatal To Plaintiff's Claims.

Tech Data's ample risk disclosures, in its public SEC filings, nullify Plaintiff's allegations of "materially false and/or misleading statements, and/or failures to disclose," in paragraph 31 of the Complaint. *See, e.g.*, *Schwartz v. Perseon Corp.*, 175 F. Supp. 3d 390, 400 (D. Del. 2016) ("If alleged omissions 'are contradicted by the company's public disclosures … there can be no Section 10(b) claim.'") (quoting *Bartesch v. Cook*, 941 F. Supp. 2d 501, 508 (D. Del. 2013)); *In re The First Marblehead Corp. Sec. Litig.*, 639 F. Supp. 2d 145, 155 (D. Mass. 2009) ("A plaintiff fails to plead an actionable § 10(b) claim predicated on the concealment of information if that information was, in fact, disclosed.").

The Company published cautionary statements and detailed disclosures, which specifically address the statements challenged in the Complaint. *See* Section II. B., *supra*. The Complaint alleges that Defendants failed to disclose "execution and operational issues" that were impacting "financial performance" that would prevent the company from "achieve[ing] its guidance." *See* Complaint, ¶ 20. Yet, in specifically cautioning readers about the Company's forward-looking statements regarding its future earnings, the Company's June 1 Press Release stated: *"any statements that refer to projections of Tech Data's or Technology Solutions' future financial performance … are forward looking statements. These forward looking statements are only predictions and are subject to risks, uncertainties, and assumptions. Therefore, actual results may differ materially and adversely from those expressed in any forward looking statements."* *See* Exhibit 1 (italics in original). The Company also informed the investing public that they could review additional information about the specific risk factors in the Company's most recent Form 10K filing. *Id.* ("*For additional information with respect to risks and other factors which could occur, see Tech Data's Annual Report on Form 10K for the year ended January 31, 2017, including Part I, Item 1A, "Risk Factors" therein, Quarterly Reports on Form 10Q, Current Reports on Form 8K and other securities filings with the Securities and Exchange Commission (the "SEC") that are available at the SEC's website at www.sec.gov and other securities regulators.*") (italics in original).

The Risk Factors disclosed in Tech Data's Annual Report on Form 10-K, as quoted above, disclosed the very information that Plaintiff alleges was omitted, defeating his claims. *See* Ex. 5, p. 11-13 (listing several "Risk Factors"). Among other risks, Tech Data explained that its ability to earn a profit may be affected by "changes in vendor terms and conditions,

15

such as rebates, …"; that it might "encounter difficulties in fully integrating TS into our

business …"; and that "TS may underperform relative to our expectations." *Id.* These Risk

Factors directly and explicitly disclosed the risk for potential rebate performance and

integration issues, which were later credited with the EPS miss. *Id.* Because these risks were

disclosed, Plaintiff cannot use these same risks as the basis for omission claims. *See, e.g.*, *In

re The First Marblehead Corp. Sec. Litig.*, 639 F. Supp. 2d at 155.

A review of analyst reports from non-party outside sources also reflects that these risks

were disclosed and appreciated by the markets. *See, e.g.*, **Exhibits 6-11**.[3] For instance, analysts

from Bank of America Merrill Lynch reiterated a Buy rating for Tech Data on June 1, 2017,

while disclosing the following downside risk factors:

> Downside risks to our [Price Objective] are: (1) a lower-than-
> expected reacceleration of the IT/PC spending cycle, which would
> slow organic growth and mitigate expected margin benefits from
> volume leverage, (2) inability to take share from competitors, as in
> the past, and thus limit outperformance to the IT/PC markets, (3)
> **inability to realize expected cost savings from restructuring**, (4)
> slowdown and/or **miss-execution in either the higher margin, or
> higher growth businesses like Data-Center, or Mobility**, and (5)
> **inability to integrate Avnet data center deal**.

Exhibit 6, p. 4 (emphasis added).

Recognizing the disclosed risks associated with the TS acquisition, analysts from Cross

Research Group LLC reiterated a Hold rating on June 2, 2017. *See* Exhibit 7, p. 1 ("We think

Tech Data is positioning itself well for future growth … . However, **given continued**

---

[3] "Among the public documents a court may consider in a motion to dismiss securities fraud claims are analyst reports when they are submitted to establish 'whether and when certain information was provided to the market,' not the truth of the matters asserted in the reports." *In re Amgen Inc. Sec. Litig.*, 544 F. Supp. 2d 1009, 1023-24 (C.D. Cal. 2008) (quoting *In re PetSmart, Inc. Sec. Litig.*, 61 F. Supp. 2d 982, 987 n.1 (D. Ariz. 1999)).

**integration risk** and more modest earnings guidance than expected (**even with the accelerated integration**), we reiterate our Hold rating.") (emphasis added). Similarly, analysts from Northcoast Research Partners, LLC reiterated a Neutral rating on Tech Data shares on June 5, 2017. *See* Exhibit 8, p. 1. ("Although we are positive on shares of Tech Data following its strong 1Q18, **we suggest investors sit on the sidelines in the near-term to get a better understanding of the combined company's earning power**. We reiterate our NEUTRAL rating on shares of Tech Data at this time.") (emphasis added). Finally, analysts from Citi Research, a division of Citigroup Global Markets, Inc., did upgrade their recommendation from Sell to Neutral on June 1, 2017, but acknowledged downside risk factors. *See* Exhibit 9, p. 13.

Tech Data's acquisition of TS was clearly recognized as a "major integration" that would require significant work, which logically entailed a level of risk and uncertainty. *See also* Exhibit 10, Raymond James Analyst Report dated June 1, 2017, p. 11 ("Tech Data acquired Avent's Technology Solutions business for $2.6 billion (closed Feb. 2017). This will require a significant integration, including IT systems and rationalization of employee functions which may present risk of customer and/or vendor attrition."); Exhibit 11, Stiefel Nicolaus & Company Analyst Report dated June 1, 2017, p. 4 ("Risks to our target price include … risks associated with M&A integration.")

These separate non-party outside analyst reports reflect that the market assimilated and understood the cautionary disclosures expressed by Tech Data in its Form 10-K filed March 30, 2017, and as expressed in the June 1 Press Release and June 1 Earnings Call. *See* Exhibits

6-11. Thus, Plaintiff cannot plausibly allege that Defendants failed to disclose these risks prior to the start of the class period.

### 5. The Complaint Fails To Allege Facts Necessary To Plead A Strong Inference Of Scienter.

Independently, Plaintiff's claims must be dismissed because the Complaint fails to plead facts sufficient to support *any* inference of scienter, let alone the strong inference requirement imposed by the PSLRA. In the Eleventh Circuit, to plead claims under § 10(b) and Rule 10b-5, a plaintiff must allege particularized allegations that each defendant intended to deceive, manipulate, or defraud, or that each acted with severe recklessness to satisfy the scienter requirement. *See Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 634 (11th Cir. 2010); *Bryant*, 187 F.3d at 1282. Allegations of "severe recklessness" are held to a very demanding standard:

> Severe recklessness is limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or so obvious that the defendant must have been aware of it.

*Thompson*, 610 F.3d at 634 (quoting *Bryant*, 187 F.3d at 1282 n.18).

Here, the Complaint merely alleges boilerplate, conclusory allegations of recklessness based solely on the allegation that Defendants supposedly knew information that had not been disclosed. *See* Complaint, ¶ 12 ("Because of their possession of such information, the Individual Defendants knew or recklessly disregarded that the adverse facts specified herein had not been disclosed to, and were being concealed from, the investing public."); ¶ 20 (containing conclusory allegations that alleged misstatements or omissions were "known to

Defendants or recklessly disregarded by them"). The Complaint's conclusory allegations of "recklessness" instead of "severe recklessness" notwithstanding, Plaintiff fails to allege facts sufficient to make the inference of scienter "more than merely plausible or reasonable." *Tellabs*, 511 U.S. at 314 (explaining that to survive dismissal, the complaint must allege facts sufficient to make the inference of scienter "at least as compelling as any opposing inference of non-fraudulent intent.").

Here, the Complaint's paltry "scienter allegations" consist of a mere two paragraphs that are patently insufficient under the stringent PSLRA and *Tellabs* standard. *See* Complaint, ¶¶ 39-40. Essentially, Plaintiff asks the Court to infer: (i) that information, which was announced in August, was available and known to the Defendants in June; and (ii) that Defendants knowingly or with severe recklessness, acted to conceal that information. *Id.* For this unwarranted inference, the only factual allegation made is that the information, which related to the earnings per share for, and market and operational issues experienced during, the quarter ending July 31, 2017, was announced in August. *See* Complaint, ¶¶ 16-23, 39-40. This is not sufficient. *See, e.g.*, *Durgin v. Mon*, 415 F. App'x 161, 166-67 (11th Cir. 2011) (concluding it was not "highly unreasonable" or an "extreme departure from the standards of ordinary care" to refer to loans as non-recourse even if the loans were not properly characterized as non-recourse); *Maguire Financial, L.P., et al. v. Powersecure International, Inc., et al.*, No. 4:14-cv-00092, 2017 U.S. App. LEXIS 22968, at *11 (4th Cir. Nov. 15, 2017) ("Appellant's argument fuses an inference that [defendant] knew enough to realize that his characterization was technically incorrect with an inference that he intended it to deceive. Yet scienter and knowledge with respect to misrepresentation are distinct components of the

requisite analytical framework."). The Complaint is fatally devoid of the allegations alleging the "who, what, where, when" the Court should expect to see pled. *See, e.g.*, *Urquilla-Diaz v. Kaplan University*, 780 F.3d 1039, 1052 (11th Cir. 2015) (recognizing that Rule 9(b)'s heightened pleading requirements requires the plaintiff to allege particular facts about "the 'who,' 'what,' 'where,' 'when,' and 'how'" of the fraud).

Separately, Plaintiff's unwarranted inference of alleged knowledge before August is undermined by the very language he quotes. *See* Complaint, ¶ 23 ("All of those issues are solvable. It's just that they impacted us in this quarter in a way that was much larger than we anticipated.") (quoting the August 31 Press Release). The Complaint does not allege facts tending to show that any of the Defendants knew about these issues in June.

Additionally, other disclosures made in August explain why Defendants could not have known this information at the time of the June 31 Press Release and June 31 Earnings Call:

> **Jim Suva** - *Citigroup Inc., Research Division - Director*
> Can you bring us up to speed about kind of when all these misexecution, pricing and rebate issues started to occur? The reason why I ask is it was approximately 3 months ago when you gave your outlook for this quarter and you were about already a month into the quarter. So that means there were about 2 months left for the things to kind of slip through. Did it all kind of hit at the end of the quarter or kind of gradually? And then I may have a follow-up.
>
> **Robert M. Dutkowsky** - *Tech Data Corporation - Chairman & CEO*
> Yes, it's a good question, Jim. I think it -- **the profitability shows up towards the end of the quarter when rebate attainment comes up short.** So you can see in both geographies, we had decent sales performance. And within the mix of those products, we had strong sales performance in some lower profitability products and less sales performance in the higher profitability products, **but we still had our eyes on the rebate potential across all of those product categories. And then when we get to the end, we came**

> **up short on the rebates. So that was a big component,** big piece
> of the performance in the quarter on a profitability perspective.

*See* Exhibit 4, at 9 (emphasis added).

As explained in the quote above, because of how rebates work in this industry, Defendants did not know about the rebate shortfall until the end of the quarter, despite strong sales numbers. *Id.* Plaintiff strategically omits this explanation from his Complaint because he cannot allege – as he must under the PSLRA – facts sufficient to make the inference of scienter "at least as compelling as any opposing inference of non-fraudulent intent." *Tellabs*, 511 U.S. at 314. Plaintiff has failed to satisfy this heightened standard. *Durgin*, 415 F. App'x at 167 ("An inference of severe recklessness is *not* as compelling as an inference that, at worst, defendants acted with inexcusable negligence.") (emphasis in original).

### 6.      The Complaint Fails To Sufficiently Plead Loss Causation.

Finally, the Court must dismiss Plaintiff's Complaint for failure to plead facts that establish that Plaintiff's alleged economic loss was caused by Defendants' alleged fraud. *See* 15 U.S.C.A. § 78u-4(b)(4) ("In any private action arising under this chapter, the plaintiff shall have the burden of proving that the act or omission of the defendant alleged to violate this chapter caused the loss for which the plaintiff seeks to recover damages.").

"To prove the causation element, a plaintiff must prove both 'transaction causation' and 'loss causation.'" *Robbins v. Koger Properties, Inc.*, 116 F.3d 1441, 1447 (11th Cir. 1997). Here, Plaintiff has failed to sufficiently allege "loss causation," which requires a plaintiff to show that the untruth alleged was in some reasonably direct or proximate way the cause of plaintiff's loss. *Id.* Plaintiff must allege that the misrepresentation was a substantial cause of the loss. *Id.*; *see also*, *Meyer v. Greene*, 710 F.3d 1189, 1195 (11th Cir. 2013) ("In other words,

in a fraud-on-the-market case, the plaintiff must prove not only that a fraudulent misrepresentation artificially inflated the security's value but also that 'the fraud-induced inflation that was baked into the plaintiff's purchase price was subsequently removed from the stock's price, thereby causing losses to the plaintiff.'").

There is no dispute here that Tech Data's stock experienced a drop when it announced its earnings per share were lower than anticipated in its forward-looking statements made in reporting on the prior quarter. But those statements are protected as set forth above. In any event, here, Plaintiff has done nothing more than simply allege the "price" he paid was inflated because of an alleged misrepresentation, which is not sufficient to allege loss causation. *See Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 338 & 346-47 (2005) ("Our holding about plaintiffs' need to *prove* proximate causation and economic loss leads us also to conclude that the plaintiffs' complaint here failed adequately to *allege* these requirements."). Plaintiff fails to allege any facts that would attempt to show that any allegedly false statements were the substantial or proximate cause of the alleged loss.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court enter an Order: (a) dismissing the Complaint in its entirety with prejudice; (b) awarding Defendants the costs and disbursements of this action, including attorneys' fees pursuant to 15 U.S.C. § 78u-4(c); and (c) awarding Defendants such other and further relief as the Court deems just and proper.

**LOCAL RULE 3.1(j) REQUEST FOR ORAL ARGUMENT**

Pursuant to Local Rule 3.1(j), Defendants request oral argument on this motion and estimates the time required for both sides to make their presentation to be one hour.

Dated: December 1, 2017.        Respectfully submitted,

*/s/ Irene A. Bassel Frick*
Brian P. Miller, Esq.
Florida Bar No. 0980633
**TRIAL COUNSEL**
Primary Email: Brian.Miller@akerman.com
Samantha J. Kavanaugh
Florida Bar No. 0194662
Primary Email:
samantha.kavanaugh@akerman.com
**AKERMAN LLP**
Three Brickell City Centre
98 SE 7th Street, Suite 1100
Miami, FL 33130
Phone: 305.374.5600
Fax: 305.374.5095

**and**

Irene A. Bassel Frick, Esq.
Florida Bar Number: 0158739
Primary Email: Irene.Frick@akerman.com
Jason L. Margolin, Esq.
Florida Bar Number: 69881
Primary Email: jason.margolin@akerman.com
**AKERMAN LLP**
401 E. Jackson St., STE 1700
Tampa, FL 33602
Phone: 813.223.7333
Fax: 813.223.2837
***Attorneys for Defendants***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 1, 2017, I filed the foregoing with the Court via CM/ECF, which will serve a true and correct copy of the foregoing via email service on counsel of record:

| | |
|---|---|
| Cullin O'Brien, Esq. | Eduard Korsinksy |
| CULLIN O'BRIEN LAW, P.A. | LEVI & KORSINSKY, LLP |
| 6541 NE 21st Way | 30 Broad St., 24th Floor |
| Ft. Lauderdale, Florida 33308 | New York, NY 10004 |
| Tel: 561.676.6370 | Tel: 212.363.7500 |
| Fax: 561.320.0285 | Fax: 212.363.7171 |
| Email: cullin@cullinobrienlaw.com | |
| | |
| Douglas Wilens | Thomas C. Michaud |
| Sabrina E. Tirabassi | VANOVERBEKE, MICHAUD & |
| ROBBINS GELLER RUDMAN & DOWD LLP | TIMMONY, P.C. |
| 120 East Palmetto Park Road, Suite 500 | 79 Alfred Street |
| Boca Raton, FL 33432 | Detroit, MI 48201 |
| Tel: 561.750.3000 | Tel: 313.578.1200 |
| Fax: 561.750.3364 | Fax: 313.578.1201 |
| Email: dwilens@rgrdlaw.com | Email: tmichaud@vmtlaw.com |
| Email: rgrdlaw.com | |

*/s/ Irene A. Bassel Frick*
Attorney